We're going to move now to Appeal No. 22-1433, Vergara v. Frey. We're going to begin with oral argument from Mr. Rosati. Good morning, Your Honors. Good morning. Please support Fabian Rosati, plaintiff. This case involves my client, an elderly man who was arrested and beaten by the Forest Park Police Department on December 6th of 2016. Shortly before the arrest, approximately 60 days, he had a police encounter with the Oak Park Police Department. It was unclear to plaintiff's counsel what occurred during that encounter. That encounter was not disclosed until two days after Mr. Vergara's cross-examination at trial. There was discovery that was issued, requests for production, requests to admit that the Forest Park Police Department had knowledge of any prior arrest from the Oak Park Police Department. Defendant's response was they did not have information to be able to provide an answer. They didn't know. The individual officer that arrested Mr. Vergara on October 7th of 2016 was Officer Relidis. Relidis was not identified. Didn't you have medical records from the Heinz VA Hospital that described the incident? We did. In the incident, the medical records were 1,300 pages of medical records. In one page of those medical records, it refers to the incident. Mr. Vergara was brought to the hospital by Thrive Counseling. Mr. Vergara is well known throughout the community as an individual with mental health challenges. The way that the report described the encounter provided that there was no information to contact the police. Mr. Vergara arrived with no police report. There was no mention of an arrest during that Heinz VA... But you also got Oak Park Police records, and your client knew this. Your client was the one who was arrested and went to the hospital with a hurt wrist. My client's position is his wrist was hurt from pounding on a door and or an altercation with a neighbor is also reflected in the Heinz VA report. So essentially what defendants argue is that plaintiffs should have gleaned from this report that there was an arrest when there wasn't. In fact, the Thrive report, the mental health counselor was called because Mr. Vergara was having a psychiatric breakdown, and he wanted to be treated by a licensed psychiatrist. So the reason why he went to the Heinz VA was disputed. It was disputed because Mr. Vergara could not locate his vehicle. It was towed from one tow yard to another to another, and he was frustrated, and he didn't know what was happening, where his vehicle was. The police were called. The bottom line is, why wasn't this report disclosed? I could have identified Relitas as an individual who possessed information that was discoverable relative to this prior wrist injury. We could have made a determination to withdraw the wrist injury. We weren't claiming any permanency. It wasn't a huge factor. In fact, the reason why so many medical records were produced was because we were considering bringing an emotional damages claim. That was the thrust of the medical history in these medical records. It just so happened that there was one page that discussed a wrist injury. The issue was discussed at the final pretrial conference, which took place before the trial, where the district court made clear that the prior arrest might be relevant depending upon how you submitted your claim for damage. So given that discussion that took place before the district court, I'm a little puzzled how you can say you didn't learn about this until during the testimony because it was something that was clearly discussed with the court. We didn't learn there was an actual arrest. We didn't learn there was actual use involved in that arrest. In fact, during that pretrial conference, the court said, so if there are any medical records, there was nothing presented yet. It was 1,300 pages of documents. Judge Shaw said, we're not going to bring 1,300 pages of medical records for the jury to review during deliberations. I want you to identify the specific records you're going to offer. But you knew there was an interaction with the police. You say you didn't know he was arrested. You knew there was an interaction with the police that injured his wrist because that was exactly the point of the district court's ruling, that I need to see how you're going to present your damages claim before I can determine if that should come in at all. Correct. A report that was disclosed was a report that was made in, I believe, November of 2016, shortly after the October encounter. That report was disclosed. It merely said Verletis had contact with Vergara and advised him to seek a private civil attorney for issues surrounding the toe of his feet. But I want to focus on the arrest. You said one of the things you didn't know in advance was that there was an arrest. The court didn't allow any testimony about an arrest to come in. So how can you claim that's a problem? Because essentially it is an arrest. The jury learned that there was an encounter. That there was an interaction. That there was an interaction with the police, the Oak Park Police Department. The counsel could have simply asked, weren't you hurt in October 6th and then identified the specific records in the Heinz VA. We could have redacted them as appropriate, and the jury could have learned without learning of a prior police encounter, merely 60 days prior to the subject arrest. Mr. Rosati, the motion in Lemonade that raised the issue before the district court, didn't that motion in Lemonade specifically ask that the court exclude or preclude the defendant from raising any prior arrests? It did. With law enforcement? And that's the context in which the discussion came up during the pretrial hearing. Isn't that correct? Correct. The court would not allow it, and the overall discussion essentially encompassed the mental health issues, not necessarily the wrist. So it was a little vague, but he did say that if you have any reports to support this wrist, it may be allowed. But it could have easily been avoided. You could have redacted the police component of it and said an X-ray was taken on October 7, 2016, and you injured your wrist. We could have discussed whether it was from pounding on the door or whatnot before the trial, before counsel said, well, didn't you have an encounter with the police, and didn't they have to use force to conduct the arrest? Well, Mr. Rosati, now I'm a little confused. So your theory seems to be, at least the thrust of the theory in your brief, seems to be that the defendant somehow engaged in misconduct or obfuscation during discovery, and that's the basis on which you asked for relief from the court. Now what I'm hearing you say is more akin to basically arguing that the district courts, the way the district court dealt with the situation and admitted the evidence, that that itself was improper. Are you arguing one or the other, or are you arguing both? I'm arguing that the statement that there was an encounter with the police on October 7 could have been avoided and should not have been permitted. Is that to reserve the remainder of your time for rebuttal? Thank you. Very good. Thank you, Mr. Rosati. We'll now move to Mr. Nyland. Good morning, Your Honors. My name is Lawrence Nyland. I represent the defendants. I do want to address a few things that Your Honors were just discussing, specifically with the motions in limine. Not only was the October, we were calling it the October 7th, 8th, 2016, arrest and treatment discussed at the pre-trial conference. In fact, in our response to motion in limine number six, we specifically said that the defendants intend to offer evidence of plaintiff's October 7th, 8th, 2016, arrest and medical treatment to rebut his claim of wrist injury. That was specifically in our motion in limine response. There's no merit to the claim that plaintiff's counsel would have been unaware. And that was discussed by the court at the final pre-trial conference. Yes, it was discussed. Which was the whole point of the ruling. Correct. Let's wait and see what your theory is. Correct. The court said that if plaintiff were going to bring a claim of wrist injury, they would allow defendants to bring evidence to rebut that specifically to prior arrest by the Oak Park police. And as I said, we mentioned this exact arrest. And I just want to address one more point. You were asking about the Heinz VA records, that record, not only, it does say that they did not have contact information from the police, but it says that Mr. Vergara arrived with a police officer that he complained of a wrist injury that he got when he was handcuffed and the police officer broke his watch during the arrest. That certainly should have been enough information right there to know that he was injured during an interaction with a police officer on October 7th or 8th, 2016, such that plaintiff's counsel would have had the ability to investigate further had he needed to. And those documents were disclosed, I believe in September of 2019, which is almost two years or more than two years before trial. Mr. Nealon. I understand that once the plaintiff said that he was seeking damages for a wrist injury and that the defendants here had damaged his wrist, that he opened the door to this prior injury, but what's the relevance of allowing the testimony that the injury arose from an interaction with the police, as opposed to an interaction with somebody and cleansing that a little bit more? So your honor, this was again, what was discussed really during the pre-trial conference and to some extent during the sidebar. I understand that, but I'm trying to find out what's the relevance of letting that particular detail in that it arose from an interaction with the police. So our position was that the relevance would be the manner in which his wrist was injured in that it was grabbed by somebody that was pulled behind his back. Which was exactly what he was claiming in this instance. And in fact, Mr. Rosati discussed that. Why, why at trial, didn't we just ask, wasn't your wrist injured on October 8th? And in fact, if you look at the record, the question before Mr. Vergara was asked about, I believe the question was, didn't you get arrested on October 8th? The first, the question right before that was what, didn't your wrist get injured on October 8th, 2016? And Mr. Vergara said, no. So he said no. And then the follow-up question was, well, weren't you arrested by the Oak Park police because we were going to get into it. That's when the objection occurred. And that's the question. What, what's the relevance that it came from the police as opposed to somebody else? I understand what you're saying. The manner in which the harm took place is relevant, but who did it? Why is that relevant? Again, I would go back to almost the same answer I just gave the, the manner in that his arm was pulled behind his back by, I mean, by a police officer while he was being arrested, that he was hurt by being put into handcuffs, which is the same thing he said in this case. And so I would say it's a fairly strong inference, even if we avoided using the word police officer to say, well, didn't somebody grab your wrist, pull it behind your back and put you in handcuffs on October 8th, 2016. That's essentially the same information. And again, after Mr. Rosati objected to that, we fronted the questions to the court and we said, your honor, we plan to get into the details of this arrest. And the court said we could, to some extent with some limitations, we then dead with no further objections. And it wasn't brought up until the next day, or I think later the same day outside the presence of the jury, when defense counsel stated, we plan to call officer religious that plaintiff's counsel then withdrew the claim for risk injury. And the report that he complains about was never shown or mentioned to the jury. The medical records were never shown or mentioned to the jury. The name officer religious was never shown or mentioned to the jury. This arrest and this incident was not mentioned again at any point after the initial questioning. And the court offered to give a limiting instruction. It was never given. Correct. Because plaintiff's counsel didn't want it. Correct. The court. And I'm not looking at the record, but it essentially said, if you're withdrawing this claim for risk injury, I could offer a limiting instruction to the jury. And the, I believe the court suggested that plaintiff's counsel should consider that because of course it might just bring the jury's attention to the incident. And plaintiff's counsel determined to withdraw the claim rather than have that limiting instruction. And moving on, I know I've discussed it to some extent, but not only is plaintiff claiming that the document was not disclosed. He's also claiming that the, the disclosure at trial was in violation to the motion and limiting. I just revert back to the pretrial conference, which the court gave the same, essentially the same ruling almost word for word at the pretrial conference that he gave at trial over plaintiff's objection. It was consistent throughout. We stated at every point that we were offering this testimony or entering this evidence to rebut a claim of risk injury. It was not as plaintiff claims to show that Mr. Vergara had previously been arrested. And then just to back up, and I think I skipped over this at the start of my brief and your honor touched on it a little bit, but there are, I pointed them out in our brief there. There are many, many instances during the course of this litigation, that plaintiff's counsel did or should have learned of this arrest. Of course, as you mentioned with, with plaintiff, Mr. Vergara was the one that was arrested and I understand that he's an elderly man and he does have mental health issues, but we asked him about it. Not only at trial, we asked him about it as deposition. And in both instances, he remembered the incident. He didn't give an exact detail of what happened, but he said,  I got an altercation with my neighbors. The police showed up and I injured my wrist. And he said, that is more than enough information that his counsel would have been aware that this may be something to look into further. If he needed to look into it further. And then also the, the Oak park documents that were disclosed. Excuse me. On, I believe in August of 2019, there was 92 pages of documents from the Oak park PD. On page 20, there's a report that was made in October 14th of 2016. It says officer religious. So it gives the name of the officer had contact with George for a, in regards to his car being towed. And Mr. Vergara was told to contact a civil attorney. And in fact, if you read that, it also puts in parentheses, the number of the arrest report, the arrest report is 18 dash 0 6, 3 9, 9. It says parentheses report number 18 dash 0 6, 3 9, 9. We turn that over to plaintiff's counsel in August of 2019. That should have been more than enough information for him to look at it and say, what's this report number 18 dash 0 6, 3 9, 9. I should go get it. If he chose not to do that, that's not the fault of defense counsel. It's not, it's not our fault. If he did not take those steps, he had by the time this trial occurred. And in fact, I would say by December of 2019, which is the day that plaintiff was deposed, plaintiff's counsel had the name of the officer. He had the date of the arrest. He had the fact that Mr. Vergara injured his wrist during that arrest and sought medical treatment. That is far more than enough information for him to take any further steps. He needed or take no further steps at all. He had all of the information that was ever disclosed. So unless there's more issues that the court would like to address. So you mentioned that the prior incident, that what was relevant was that someone, the police officer took Mr. Vergara's arms, put them behind his back and then handcuffed him is, was your theory that the handcuffing itself contributed to the injury or was it just him being forced to put his arms behind his back? The plaintiff's theory was that the handcuffing contributed to his injury that he was injured. If we go to the arrest by the forest park beliefs, his theory was that he was injured in several different ways, including when the officers pulled his arm behind his back and put him tightly into handcuffs, he injured his wrist, which again, is exactly what he claimed related to the October, to the 16 arrests. And so I would say that those details are, are relevant to that risk claim. And that's what the court determined as well. And to say that not only was the court wrong to allow the testimony, but that it prejudiced the jury to such an extent that the trial was unfair. And then that the court abuses discretion by deciding not to overturn the verdict. It is, it's quite a leap here and I don't think that there's any evidence in this record that would show that. So unless you have any more questions or any further issues, you're the ranger on time. Thank you. Thank you very much for Mr. Neal and Mr. Rosati. We'll go back to you for rebuttal argument. Thank you. A couple of things. There was a mention of the discussion of the prior incident, the October incident during the deposition. There was not a mention of police throughout that, that transcript. It was phrased as, didn't you have an encounter with your neighbors? No police. The council stated that the disclosed report provided the report number. It doesn't say report number. It just says C and then some numbers. It doesn't say he was arrested. Does they see the arrest of excellent amount? There's no use of force reference. There's nothing, nothing there. It's, it's also notable that there is no articulable excuse for not disclosing the document. The three nine nine report releases report. Why isn't it disclosed? It was subpoenaed. An email was sent to my office here in risk. It's in response to the Oak park police subpoena. Here are the documents that was not contained. Why my office serves a subpoena. We provide council notice. We serve the subpoena. When we received the documents, we don't decide which documents should go to council. All the documents go to the council. And that's the way the spirit of our discovery rules require that. That didn't happen. Um, there was no notice of an actual October arrest. We had notice of an October injury, but we had no notice that officer religious of the old park police department, arrested plaintiff on October 7th, 2016. And there's no reason why that report could not have been produced. The arrest report. We know let's depose religious. Let's see what happened. Let's depose the witnesses that were identified in that report. No, instead defense council waited till the eve of trial to say in there, they could have put anything in response to their motion. Eliminate. There was no source of information supporting that. They slipped it in as a way to, to, to, to, to get around the motion and limiting. Thank you, Mr. Rosati. Thank you, Mr. Nealon.